Peter D. DeChiara
David R. Hock
Michael S. Adler
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DR. GERALD FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                      Plaintiff,

      - against -

EDWARD WILLNER,

                     Defendant.
-------------------------------------------------------------------x

CV 12-3071

Civil Action No.

**COMPLAINT**

GARAUFIS, J.

AZRACK, M.J.

      Plaintiff Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), for his complaint alleges as follows:

## INTRODUCTION

      1.    This is an action by a fiduciary of various employee benefit plans against Defendant Edward Willner ("Willner") for relief pursuant to Sections 404, 409, 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1104, 1109, 1132 and 1145, and to collect various other sums due to the JIB in accordance with the terms of a collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(2) and (3), 502(f) and 515 of ERISA, 29 U.S.C. §§1132(a)(2) and (3), 1132(f) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. §185(a).

3. Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. §185(a), as the JIB maintains its principal office in this district and the various employee benefit plans are administered and maintain their principal offices in this district.

## THE PARTIES

4. The Plaintiff is the Chairman of the JIB, which administers various employee benefit plans established and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm and other related industries. The JIB maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

5. The JIB is the administrator and fiduciary within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Vacation-Holiday Unemployment Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, and also collects contributions required to be paid to the National Employees Benefit Fund (collectively,

the "ERISA Plans"). Each of the ERISA Plans is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3), and a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37). Each of the ERISA Plans is also jointly administered by a Board of Trustees, comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

6. The Deferred Salary Plan of the Electrical Industry (the "DSP") is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of Section 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the collective bargaining agreements, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the collective bargaining agreement and to remit such amounts plus additional salary deferrals made at the election of the employee (together, "Employee Contributions"), to the DSP, along with related payroll reports. The Employee Contributions are employee elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages. Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees. The Employee Contributions and the Employer Contributions to the DSP are collectively referred to hereafter as "DSP Contributions." Employers are required to send all DSP Contributions and related payroll data to the DSP in care of Mercer Trust Company ("Mercer"), the third-party record-keeper retained by the DSP for such purposes. All DSP Contributions are allocated to individual bookkeeping accounts in the name of the covered employees, who are

entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the Trustees of the DSP.

7. In addition, the JIB collects assessments from certain employees covered by the collective bargaining agreements who authorize their employers to deduct from their wages union dues and employee loan repayments due to the Union ("Union Amounts"), and employee loan repayments due to one or more of the above-referenced ERISA Plans. The JIB also collects, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: the Electrical Employers Self Insurance Safety Plan, Benefit and Wage Delinquency Fund, and COPE Fund, and contributions to fund the operations of the JIB (collectively, the "Non-ERISA Plans"). Together, the Union Amounts and the amounts owed to the Non-ERISA Plans are referred to as the "Non-ERISA Contributions." The contributions to the ERISA Plans, except the DSP, and the Non-ERISA Contributions are collectively referred to as the "JIB Contributions." The JIB Contributions with the DSP Contributions together are referred to hereafter as the "Required Contributions."

8. The JIB is the Administrator of all of the ERISA Plans and the Non-ERISA Plans (collectively, the "Plans"). Under the collective bargaining agreements, signatory employers are required to remit the Required Contributions, as well as summaries of their payroll records.

9. The JIB and each of the Plans are third-party beneficiaries of the collective bargaining agreements.

10. Willner is the principal of EA Technologies Inc. (the "Company") and, by acting directly or indirectly in the interest of an employer constituting an "employer" as defined

by Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a), is personally liable for unpaid contributions.

11. Upon information and belief, the Company is, and at all times relevant to this action has been, a New York corporation with its principal facility located at 150 Motor Parkway, #201, Hauppauge, New York, 11788. Upon information and belief, at all times relevant to this action, the Company was engaged in the electrical contracting business within the metropolitan New York area. The Company is, and at all times relevant to this action, has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a).

## FACTUAL BASIS FOR CLAIMS

12. The Company agreed to be bound to the terms of the collective bargaining agreements between the New York Electrical Contractors Association, Inc., the Association of Electrical Contractors, Inc. ("AEC") (collectively, the "Associations"), and the Union. These collective bargaining agreements include one covering the period May 10, 2007 through May 13, 2010 (the "2007 CBA"), and one covering the period May 12, 2010 to May 8, 2013 (the "2010 CBA"). The 2007 CBA and the 2010 CBA are collectively referred to as the "CBAs."

13. Pursuant to the CBAs, the Company is obligated to remit the Required Contributions at the rates set forth in the CBAs for any employee performing work covered by the CBAs.

14. Along with the weekly JIB Contributions, the Company is required to submit payroll reports ("Payroll Reports") to the JIB that provide the name, gross wages, and hours worked for each worker employed by the Company on whose behalf JIB Contributions are made.

15. Along with the weekly DSP Contributions, the Company is required to submit reports to Mercer that set forth the amounts of Employee Contributions and Employer Contributions and loan repayments being deducted from employee wages and remitted to Mercer. These reports are referred to as hereafter the "DSP Reports."

16. The CBAs and the Trust Agreements establishing each of the Plans are agreements between the Union and various employers and employer associations within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145, and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a). In addition, the CBAs and the Trust Agreements of the ERISA Plans are plan documents within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145.

17. As Administrator of the ERISA Plans, the JIB has adopted a delinquent contribution policy calling for the assessment of interest on late-paid contributions due and owing, at the rates established by the ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621.

18. The Company has a history of failing to contribute as required to the JIB.

19. As a result of the Company's repeated delinquencies, and since 2008, the JIB has filed four lawsuits in this Court seeking to collect contributions and attendant damages due from the Company. The Company has defaulted in answering the fourth and most recent suit (11-CV-05662), filed November 18, 2011. A motion for default judgment [Docket No. 6], which seeks judgment against the Company for much of the amounts sought against Willner in this action, is presently pending before the Court.

20. On or about April 21, 2011, the Company and Willner (together, the "Debtors"), entered into a Stipulation and Order of Settlement (the "April 2011 Stipulation"),

with the JIB under which they acknowledged that they jointly and severally owed Required Contributions to the JIB in the amount of $312,196.92, which represented contributions for the weeks ending February 9, 2011 through March 30, 2011 in the amount of $230,238.03, interest due in the amount of $7,459.96, and an audit deficiency in the amount of $74,498.93.

21. The April 2001 Stipulation provided that the stipulation constituted an agreement within the meaning of Section 515 of ERISA, 29 U.S.C. §1145.

22. The April 2011 Stipulation required the Debtors to make an initial payment of $10,000 on Wednesday, May 4, 2011 and each Wednesday thereafter until May 25, 2011 and to pay the audit deficiency, subject to any adjustment of the amount, by June 25, 2011.

23. In the April 2011 Stipulation, the Debtors further agreed to make all required ongoing weekly contribution payments to the JIB when they become due.

24. Willner signed the Stipulation twice: first in his capacity as the principal of the Company and second in his individual capacity. By signing the stipulation in his personal capacity, Willner agreed to be personally liable for the amounts due.

25. The April 2011 Stipulation provided that, in the event of a default by the Debtors not cured within five (5) calendar days after receipt of written notice, the JIB would be entitled to commence an action in this Court for breach of the April 2011 Stipulation and simultaneously have judgment entered against the Debtors for the full amount owing, plus interest and attorney's fees and costs, less any payments made by the Debtors.

26. The Debtors failed to make the payments required under the April 2011 Stipulation. By letter dated June 9, 2011, the JIB advised the Debtors of their default under the stipulation.

27. The Debtors failed to cure the default within five (5) calendar days, as required by the April 2011 Stipulation.

28. In or about June 2011, in an undated document signed by Willner on behalf of the Company and himself personally ("June 2011 Agreement"), the Debtors acknowledged that they had breached the April 2011 Stipulation.

29. In the June 2011 Agreement, Willner promised that at the closing of the sale of an apartment known as Millennium Point, PH1-C ("the Apartment"), which Willner owned through a limited liability company, the Debtors would pay all of their outstanding obligations to the JIB, with the exception of the most recent weeks of contributions owed.

30. A June 6, 2011 letter from the Debtors' counsel to Christina Sessa, Associate Counsel for the JIB ("Sessa"), confirmed that payment

> will be disbursed to the JIB at closing for amounts from the Company, which payment shall include any benefit contributions, any DSP contributions and any audit deficiency (as adjusted subject to review between the JIB and the Company) for the period up to three weeks prior to the closing date.

31. The Debtors have made none of the payments provided for in the June 2011 Agreement.

32. As a result of the Debtors' failure to comply with the terms of the April 2011 Stipulation and June 2011 Agreement, the JIB notified the Company's employees by letters dated October 12, 2011 that their health coverage and other benefits might be terminated as a result of the Company's failure to remit contributions.

33. In significant part as a result of the JIB's October 2011 letters to the Company's employees, Willner contacted the JIB concerning settlement of amounts then due.

34. On or about November 3, 2011, the Debtors entered into a Stipulation and Forbearance Agreement (the "November 2011 Stipulation") with the JIB with terms substantially similar to the terms agreed upon under the April 2011 Stipulation.

35. Under the November 2011 Stipulation, the Debtors acknowledge that they jointly and severally owed the JIB, for employee benefit plans and other programs administered by the JIB, the estimated amount of $817,172.35, which represented JIB Contributions for the weeks ending February 9, 2011 through March 30, 2011 in the amount of $230,238.03; interest due in the amount of $7,459.96; an audit deficiency not to exceed $74,498.93; DSP Contributions in the estimated amount of $227,204.13; the sum of $268,422.25 to replace uncollectable checks that Debtors had submitted to the JIB; shortages totaling $5,515.74; and interest due on the shortages in the amount of $3,833.31.

36. Pursuant to the Stipulation, the Debtors were to make five (5) weekly payments of $20,000 commencing on Wednesday, November 9, 2011 and each Wednesday thereafter for four weeks; a lump sum payment of $450,000, no later than December 14, 2011; and weekly payments thereafter of $7,000 until the balance was paid in full.

37. Pursuant to the November 2011 Stipulation, the Debtors further agreed to make all required ongoing weekly contribution payments to the JIB when they become due.

38. Willner signed the November 2011 Stipulation twice: first in his capacity as the principal of the Company, and second in his individual capacity. By signing in his individual capacity, Willner agreed to be personally liable for the amounts due.

39. The November 2011 Stipulation provides that, in the event of a default by the Debtors, which is not cured within five (5) calendar days after receipt of written notice, the JIB shall be entitled to commence an action in this Court for breach of the November 2011

Stipulation and simultaneously have judgment entered against the Debtors for the full amount owing, plus interest, and attorney's fees and costs, less any payments made.

40.     In further consideration and as an inducement to the JIB to enter into the November 2011 Stipulation, the Debtors executed an Affidavit for Judgment by Confession to be entered against them in the event of a breach of the November 2011 Stipulation.

41.     The Debtors have failed to make the payments required by the November 2011 Stipulation. By letter dated June 12, 2012, the JIB advised Willner of his default under the November 2011 Stipulation.

42.     Willner has failed to cure the default within five (5) calendar days, as required by the stipulation.

43.     On information and belief, as indicated by a deed ("Deed") filed with the New York City Department of Finance, the sale of the Apartment closed on January 20, 2012.

44.     The Deed reflects that the Apartment sold for $4,752,888.

45.     Willner failed to inform the JIB of the closing.

46.     Only on June 11, 2012, through a third-party, did the JIB learn that Willner had sold the Apartment.

47.     On or about June 12, 2012, the Joint Board wrote a letter (the "June 12, 2012 Letter") to Debtors' counsel demanding immediate payment of the amount owed, $983,375.04.

48.     Pursuant to his obligations under the April 2011 Stipulation, the June 2011 Agreement, and the November 2011 Stipulation, Willner currently owes a total of approximately $983,375.04, including, but not limited to, at least $523,602.25 in JIB Contributions commencing with week ending February 9, 2011; at least $96,695.04 in DSP Contributions

commencing with week ending July 6, 2011; at least $14,640.83 in interest on Required Contributions, commencing with the week ending February 3, 2010, that were paid late but paid prior to the commencement of this action; $74,498.93 in an audited contribution deficiency for the weeks ending April 1, 2009 through March 31, 2010; $5,515.74 in Required Contribution shortages for week ending January 5, 2011; and $268,422.25 for dishonored checks submitted as payment for amounts due for weeks ending December 8, 2010 through February 2, 2011.

49. Upon information and belief, additional amounts have already become due and owing by Willner.

50. Upon information and belief, additional amounts will continue to become due and owing during the pendency of this action.

## FIRST CAUSE OF ACTION

51. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

52. Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law make such contributions in accordance with the terms and conditions of such plan or such agreement."

53. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action brought by a fiduciary on behalf of a plan to enforce
> Section 515 in which a judgment in favor of the plan is awarded,
> the court shall award the plan,
> (a) the unpaid contributions,
> (b) interest on the unpaid contributions,
> (c) an amount equal to the greater of
>     (i) the interest on the unpaid contributions or;

11

     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions],
(d) reasonable attorney's fees and costs of the action, and
(e) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of title 26.

54. The Debtors' failure to pay the amounts due under the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation constitutes a failure to make contributions in accordance with the terms of the plan documents of the ERISA Plans, and a violation of Section 515 of ERISA, 29 U.S.C. §1145, thereby giving rise to an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), for which Willner is personally liable.

## SECOND CAUSE OF ACTION

55. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

56. By failing to timely remit the Employee Contributions to the DSP and allowing those DSP assets to be retained in, and commingled with, the Company's general assets, the Company and Willner, in his official capacity as an officer of the Company and in his individual capacity: (a) violated their fiduciary duty to ensure that plan assets of the DSP were held in trust by one or more trustees pursuant to the provisions of Section 403(a) of ERISA, 29 U.S.C. §1103(a); and (b) permitted plan assets of the DSP to inure to the Company's and/or Willner's benefit, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

57. As a direct and proximate result of Willner's actions or omissions, the DSP has suffered losses for which Willner is personally liable, pursuant to the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation.

## THIRD CAUSE OF ACTION

58. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

59. Willner's failure to remit the Required Contributions in accordance with the CBAs and various agreements is a breach of the CBAs and various agreements, thereby giving rise to an action against the Willner pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a).

## FOURTH CAUSE OF ACTION

60. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

61. By failing to timely remit the Employee Contributions to the DSP and by causing those plan assets of the DSP to be retained in and commingled with the Company's general assets, the Company and Willner, acting in their fiduciary capacity: (a) engaged in prohibited transactions; (b) failed to discharge their duties with respect to the DSP solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the DSP, as required by Section 404(a)(1)(A) of ERISA, 29 U.S.C. §1104(A)(1)(a); and (c) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by Section 404(a)(1)(B) of ERISA, 29 U.S.C. §1104(a)(1)(B), for which Willner is personally liable pursuant to the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation.

62. As a direct and proximate result of the Company's and Willner's repeated failures to discharge their fiduciary duties properly, the DSP and the participants and

13

beneficiaries have suffered losses for which Willner is personally liable, pursuant to the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation.

## FIFTH CAUSE OF ACTION

63. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

64. As a result of the Company's failure to make the payments to the JIB as required under the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation, Willner is personally liable for such obligations, thereby giving rise to an action to enforce them under common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against Willner:

A. Ordering Willner to pay the amounts due pursuant to the April 2011 Stipulation, the June 2011 Agreement and the November 2011 Stipulation;

B. Ordering Willner to cause the Company to submit Payroll Reports and DSP Summaries for any weeks for which such reports have not been submitted as of the date judgment is entered;

C. Ordering Willner to pay, or cause the Company to pay, the Required Contributions determined by the Court to be due and owing; and

D. Ordering Willner to pay, or to cause the Company to pay, interest on the amount of Required Contributions found to be due and owing, calculated through the date that judgment is entered at the rate established by the individual Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621; and

E. Ordering Willner to pay, or to cause the Company to pay, interest on any late-paid Required Contributions paid prior to the filing of the Complaint, and such further

interest as may accrue on that amount calculated at the rate established by the individual Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621 through the date payment of said interest amount is received or the date judgment is entered; and

    F. Ordering Willner to pay, or to cause the Company to pay, interest on any late-paid Required Contributions paid after the filing of the Complaint, and such further interest as may accrue on that amount through the date payment of said interest amount is received or the date judgment is entered; and

    G. Ordering Willner to pay, or to cause the Company to pay, an amount equal to the greater of:

      i. the interest on the Requirement Contributions owed with respect to the ERISA Plans; or

      ii. liquidated damages equal to 20% of the Required Contributions owed with respect to the ERISA Plans; and

    H. Ordering Willner to pay, or to cause the Company to pay, reasonable attorney's fees and costs of the action; and

    I. Ordering such other legal or equitable relief as the Court deems appropriate.

Dated: June 19, 2012
   New York, New York

By: _____
Peter D. DeChiara
David R. Hock
Michael S. Adler
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100
Attorneys for Plaintiff